Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of ELLEN WHALEN, Respondent, for Compensation under the Workmen's Compensation Law, for the Death of Her Husband, WILLIAM C. WHALEN, _v._ STANWOOD TOWING COMPANY, Employer, and NEW AMSTERDAM CASUALTY COMPANY, Insurance Carrier, Appellants.

Third Department, January 8, 1919.

**Workmen's Compensation Law — death of captain of vessel leaving same after discharge — proof not justifying award.**

Where the captain of a tugboat was called to the offices of the owner and discharged for intoxication and returned to the boat to get his personal belongings, but instead of leaving remained for dinner and subsequently left the boat and afterwards his dead body was found in the river in that vicinity, his dependents are not entitled to an award under the Workmen's Compensation Law, there being no proof that he fell from the boat instead of from the wharf.

Under the circumstances, there was no proof that the deceased came to his death through an accident arising in the course of his employment.

JOHN M. KELLOGG, P. J., dissented.

APPEAL by the defendants, Stanwood Towing Company and another, from an award of the State Industrial Commission, made on the 12th day of August, 1918.

_Frederick Mellor_ [_O. M. Quackenbush_ of counsel], for the appellants.

_Merton E. Lewis, Attorney-General_ [_E. C. Aiken, Deputy Attorney-General_, of counsel], and _Robert W. Bonynge_, counsel for the State Industrial Commission, for the respondents.

H. T. KELLOGG, J.:

The deceased was captain of a tugboat which was tied up at Pier 11 in the East river. On January 20, 1918, at about nine-thirty A. M., he called up the office of his employer. The officer in charge assumed from his talk that he was intoxicated, and directed him to come to the office. He attended at about eleven-thirty, was paid off and discharged. Thereafter, between eleven and one o'clock, he was seen in the pilot house of the tugboat, and at this time asked a friend to come aboard for something to eat. The engineer of the tugboat saw him when he came back from the office, at which time he stated that he was through, and had come for his clothes. The engineer had dinner with him, and last saw him at about one-thirty o'clock when he was still on board, though he had started for the shore. He was never seen alive again. On May 3, 1918, his dead body was found in the river in the vicinity of Pier 11. If it be considered that, after the discharge of the deceased, his employment continued a reasonable length of time, to enable him to remove his belongings from the boat, it must nevertheless have ceased immediately upon his leaving it. It cannot be inferred that he fell into the water while in the act of leaving the boat, or prior thereto, rather than that after leaving it he fell from the dock while proceeding along its edge in an intoxicated condition. Indeed, it would seem that if he fell while in the act of leaving, the engineer who saw him start for shore would have heard a splash of water when he struck it, or heard him cry for help. Only a mere guess leads to the conclusion that the deceased fell into the water prior to attaining a secure foothold upon the pier. There was no proof, therefore, that the deceased came to his death through an accident arising in the course of his employment.

The award should be reversed and the claim dismissed.

All concurred, except JOHN M. KELLOGG, P. J., dissenting.

COCHRANE, J. (concurring):

In the absence of substantial evidence to the contrary the claim comes within the provisions of the Workmen's Compensation Law (Consol. Laws, chap. 67 [Laws of 1914,

chap. 41], § 21).  Substantial evidence to the contrary here appears and with the appearance of such evidence there simultaneously occurs the disappearance of the presumption on which alone the claimant relies.  After his discharge from the employment the deceased was entitled to a reasonable opportunity to get his belongings and leave the boat.  If he delayed unreasonably the risk was his and not his employer's.  After returning to the boat he had his dinner thereon and delayed his departure far beyond the time necessary for that purpose.  His presence on the boat when he fell from it into the water, assuming the accident to have happened in that manner, was not incidental to his employment or to his quitting the employment but was in fulfillment of a purpose personal to himself.  (See *Pope* v. *Merritt & Chapman Derrick & Wrecking Co.,* 177 App. Div. 69.)

Hence I concur in the result.

Award reversed and claim dismissed.